IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDUARDO RIOS, | ) | CASE NO. 1:15 CV 1146 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

## Introduction

Before me[1] is an action by Eduardo Rios under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Rios, who was 49 years old at the time of the administrative hearing,[11] graduated from high school[12] and was last employed in 2012 at Nord Vocational Industries, a sheltered training program.[13] His past relevant work history includes employment as a commercial floor cleaner, bagger/stocker, material handler, landscape laborer, and stock clerk.[14]

---

[6] ECF # 13.

[7] ECF # 25 (Commissioner's brief); ECF # 19 (Rios's brief).

[8] ECF # 27 (Commissioner's charts); ECF # 19-2 (Rios's charts).

[9] ECF # 19-1 (Rios's fact sheet).

[10] ECF # 29.

[11] ECF # 19-1, at 1.

[12] *Id.*

[13] *Id.*

[14] *Id.*

The ALJ, whose decision became the final decision of the Commissioner, found that Rios had the following severe impairments: anxiety disorder and affective disorder (20 CFR 404.1520(c) and 416.920(c)).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Rios's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: ability to interact occasionally and superficially and receive instructions and ask questions appropriately in a smaller and less public to nonpublic work setting; ability to cope with the ordinary and routine changes in a work setting which is not fast paced or of high demand.[16]

Given that residual functional capacity, the ALJ found Rios incapable of performing his past relevant work as a commercial floor cleaner, bagger/stocker, material handler, landscape laborer, and stock clerk.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Rios could perform. The ALJ, therefore, found Rios not under a disability.

---

[15] ECF # 11, Transcript ("Tr.") at 14.

[16] *Id.* at 16.

**B.     Issues on judicial review**

Rios asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Rios presents the following issue for judicial review:

1. Whether the ALJ's failure to include functional limitations resulting from Mr. Rios's tremors in the RFC was reversible error.[17]

2. Whether the ALH failed to appropriately evaluate the medical opinions of record including those of the treating sources.[18]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.

---

[17] ECF # 19 at 13.

[18] *Id.* at 18.

> Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such

---

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F.App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a

---

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers*, 486 F.3d at 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of

---

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F.App'x 543, 551-52 (6th Cir. 2010).

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree

---

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F.App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B.     Application of standards**

This matter presents several issues, which will be separately addressed below.

***1.     Tremors***

First, Rios contends that the ALJ failed to adequately address hand tremors initially at Step 2, and then later in formulating the RFC. Rios argues that the initial error was caused by the ALJ's failure to understand that the hand tremors were essentially anxiety related and not the result of any physical impairment.[70] So understood, Rios contends that the negative

---

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] ECF # 25.

findings of the MRI and EMG studies, which the ALJ relied on, go to the question of his paresthesia and not his tremors.[71]

Moreover, regardless of their cause, Rios asserts that his tremors interfere with his ability to use his hands, and the RFC should have included an appropriate limitation.[72]

There is no medical evidence to support the view that any tremors resulted from anxiety and not an underlying physical cause or opining that any functional limitation existed as a result of tremors. In fact, as the Commissioner points out, the medical evidence cited by the ALJ in her Step 2 analysis of this issue specifically includes a report from Dr. W. Jerry McCloud, M.D., a state agency reviewing physician, which directly addresses this issue. In that report, Dr. McCloud states that Rios had claimed difficulty using his hands as a result of nerve damage, but that subsequent review of the diagnostic tests showed that Rios's range of motion, fine motor skills, and coordination were intact.[73] On that record, the ALJ at Step 2 found that although Rios experienced some diminished sensation to touch over his right arm, this condition did not result in either a "functional limitation or deficit."[74]

In addition, the medical evidence includes another report, also cited by the ALJ, from Dr. Christopher Babiuch, M.D., which states that although Rios complained of tremors, there

---

[71] *Id.*

[72] *Id.* at 15.

[73] ECF # 11, Transcript "Tr." at 122.

[74] Tr. at 14 (citing *id.* at 122).

were "minimal" objective findings to support that conclusion.[75] In fact, as the Commissioner notes, Dr. Babiuch's notes also contain the statement that both Rios's tremors and paresthesia improved when he took Neurotnin - evidence that the tremors and paresthesia were connected and not unrelated.[76]

In sum, substantial evidence exists in this record, and specifically within the ALJ's opinion, to support the conclusion at Step 2 that any tremors were not a severe impairment. Further, and for the reasons stated above, substantial evidence supports the finding in the RFC that any tremors here did not create a functional limitation.[77] Finally, and for the same reasons, I find that the Step 5 analysis is not flawed for including jobs that purportedly could not be done with tremors.[78]

---

[75] Tr. at 14.

[76] ECF # 25 at 12.

[77] Rios in his reply brief asserts that the ALJ's conclusion of no functional limitation was a misreading of the evidence and improperly offered a "judicial finding." ECF # 26 at 3. Instead, Rios contends that proof that his tremors were a functional limitation is found in his own "un-contradicted testimony." *Id*. Yet, Rios accepts that there is no medical opinion evidence from his own physicians to that effect. *Id.* at 4. And Rios does not address the opinion of the state agency reviewer, cited above, and not contradicted, that there is no evidence of a severe medically determinable impairment. *See,* Tr. at 122.

[78] *See*, ECF # 26 at 5. I also note here, as does the Commissioner, that once an ALJ has concluded that no severe impairment exists at Step 2 it is "a needless formality" to have the ALJ undertake the same analysis at a later step. ECF # 25 at 12 (citation omitted).

### *2.  Concentration, persistence and pace limitation*

Rios contends that the ALJ erred by not including sufficient limitation as to concentration, persistence and pace in the RFC.[79] In particular, while Rios acknowledges that the RFC limitation to a job that was not fast-paced nor of high demand "may go to the element of pace, [] it still does not address [the] moderate limitations in [my] ability to pay attention for an extended period of time up to 2 hours."[80]

The ALJ expressly accorded "great weight' to the opinion of the state agency reviewer who found that Rios has "moderate difficulties" in maintaining concentration and persistence, and that with such difficulties Rios can interact occasionally and superficially with others, and receive instructions and ask questions appropriately in a smaller, less public to nonpublic work setting where he can cope with ordinary and routine changes.[81] That is exactly the formulation used in the RFC.[82]

As I noted in *Salem v. Commissioner of Social Security*,[83] where an ALJ makes no specific durational limitation findings, but only finds, as here, a moderate limitation as to concentration, persistence and pace, "the RFC need contain no more than a limitation to

---

[79] ECF # 19 at 15.

[80] *Id*. at 16.

[81] Tr. at 17-18.

[82] *Id*. at 16.

[83] *Salem v. Comm'r of Social Security*, No. 1:12-cv-2345, 2014 WL 1304933 (N.D. Ohio March 27, 2014).

-16-

simple, repetitive, unskilled work."[84]  It is only when the ALJ makes "additional findings as to duration or pace limitations, or the source reports relied on by the ALJ support such findings," that "the RFC must incorporate such additional limitations."[85]

Here, the ALJ made no specific findings as to any specific concentration limitation, and, perhaps just as important, the state agency reviewer on whose report the ALJ relied also made no specific limitation as to concentration. Thus, the RFC was not required to incorporate any specific concentration limitation but may express that limitation in terms that limit Rios to work where he is in a small nonpublic setting and dealing with only routine or ordinary changes.[86] Rios's proposed limitation that he can only concentrate for periods of up to two hours at a time is not supported by the state agency reviewer's opinion on which the ALJ relied for this RFC, and so such a specific time limitation is not required in the RFC.

### 3. *Weighing opinion evidence*

Finally, Rios asserts that the ALJ erred in failing to appropriately weigh the opinions of Dr. Dominic Gomes, M.D., a psychiatrist, and a report prepared by Nancy Danielson, APRN, CSN, which was completed "in collaboration with" Dr. P. Abraham, D.O., a psychiatrist. The ALJ made no finding that Dr. Gomes was a treating source and so entitled to have his opinion evaluated under the protocol for weighing treating source opinions. The

---

[84] *Id*. at *3.

[85] *Id*.

[86] *Id*. (citation omitted).

ALJ found that Nurse Danielson was not herself an acceptable medical source, and that Dr. Abraham never treated Rios or signed off on Nurse Danielson's treating notes.[87]

A person cannot be a treating source if that individual has never examined the claimant.[88] But, when patients receive medical care, particularly mental health care, in the context of a "free-clinic type facility" where typically patients see "social workers or counselors more frequently than psychiatrists,"such patients should not be penalized for receiving care in that manner, and psychiatrists can qualify as treating sources where they only infrequently examine the claimant directly but nevertheless have access to the patient's treatment notes from the entire facility.[89]

Accordingly, while accepting the foregoing as true, I see no error in the treatment afforded to the opinion of Nurse Danielson, signed by Dr. Abraham. Of critical importance here, that the ALJ found that Dr. Abraham "did not treat the claimant." While it may be that the nurses and counselors in the clinic environment will see the claimant far more frequently than will the supervising physician, and while it may also be true that the supervising physician need only have access to the entire treatment record as opposed to being required to sign off on the treatment notes as the ALJ here implies, it must also be true that the

---

[87] Tr. at 18.

[88] *Porter v. Commissioner of Social Security,* 634 Fed. Appx. 585, 586 (6th Cir. 2016)(citation omitted).

[89] *Ash v. Commissioner of Social Security,* No. 2:11-cv-135, 2012 WL 1340372, at *7 (S.D. Ohio April 17, 2012)(citing *Puckett v. Commissioner of Social Security,* No.1:10-cv-528, 2011 WL 4366665 (S.D. Ohio April 19, 2011)).

supervising physician will have actually seen and examined the patient directly before being characterized as a treating source.

The situation as to Dr. Gomes's opinion is different. First, the ALJ makes no finding as whether Dr. Gomes is or is not a treating source. Second, Dr. Gomes was the successor to Dr. Abraham as the supervising physician at the facility[90] and so would have been entitled to rely on access to all the treatment notes in the file once he had established a treating relationship with Rios directly. While the Commissioner correctly points out that this relationship was not established until after Dr. Gomes wrote his opinion,[91] a treating relationship was later established.[92]

But it is not necessary to decide if Dr. Gomes was a treating source in this case. Even assuming that Dr. Gomes should have been acknowledged as a treating source here, the ALJ, did give good reasons for not affording greater weight to his opinions. The ALJ notes that Dr. Gomes's opinion that Rios has "marked" limitations as to nearly all areas of functioning is not supported by Dr. Gomes's own notes, which show Rios is able to live alone, is sleeping well, is organized, able to take care of personal hygiene, is cooperative, coherent, alert and oriented.[93] Indeed 2013 Nord Center notes from Dr. Gomes are consistent with the

---

[90] ECF # 19 at 6.

[91] ECF # 25 at 17.

[92] The Commissioner's argument to the contrary is addressed above in the discussion on treating source relationships in the context of care within a free clinic type setting.

[93] Tr. at 19.

characterization of them by the ALJ,[94] and a May 2013 note from a counselor reports that Rios is "looking for part-time employment after he finishes his training program" and that his medication "doing great."[95]

Accordingly, the ALJ gave good reasons for discounting Dr. Gomes's functional opinions, permitting meaningful judicial review of that decision. Substantial evidence exists for the decision to give no weight to the mental functional capacity opinion of Dr. Gomes.[96]

## Conclusion

Substantial evidence supports the finding of the Commissioner that Rios had no disability. Accordingly, the decision of the Commissioner denying Rios's disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: June 6, 2016              s/ William H. Baughman, Jr.
                                 United States Magistrate Judge

---

[94] *Id*. at 630-33.

[95] *Id*. at 634.

[96] I further note that I find no error in the ALJ's decision to credit the opinion of the state agency reviewer even though it was given in 2010. As is noted above, the evidence from 2013 shows Rios had substantially not changed in material functional aspects, but may even have improved somewhat from regular therapy and mediation.